Michael D. Adams (State Bar No. 185835)
madams@rutan.com
Sarah Van Buiten (State Bar No. 324665)
svanbuiten@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA  92612
Telephone:   714-641-5100
Facsimile:    714-546-9035

Attorneys for Plaintiff
CONSUMERDIRECT, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMERDIRECT, INC.,<br><br>  Plaintiff,<br><br>  vs.<br><br>AUGUST TAYLOR, an individual; and DOES 1 - 10, inclusive,<br><br>  Defendants. | Case No. 8:23-cv-02067<br><br>**COMPLAINT FOR:**<br><br>1. **FEDERAL TRADEMARK INFRINGEMENT**<br>**[15 U.S.C. § 1114]**<br><br>2. **FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**<br>**[15 U.S.C. § 1125(a)]**<br><br>3. **COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ConsumerDirect, Inc. ("Plaintiff" or "ConsumerDirect") alleges as follows against defendants August Taylor ("Defendant" or "Taylor") and DOES 1-10 (with Taylor, "Defendants"):

## NATURE OF THE CASE

1. Defendant, an individual residing in Vietnam is exploiting Plaintiff's CONSUMERDIRECT trademark for sake of perpetrating phishing scheme, through which unsuspecting consumers provide their credit card information to obtain

discounted products that are never provided. Instead, Defendant continues to charge the credit card as part of a purported subscription services, for which no services are provided. Relying on Defendant's false association with Plaintiff, a number of Defendant's victims have erroneously blamed Plaintiff for their misfortune.

2. Plaintiff has already sought to bar Defendant's fraudulent acts through initiation of a proceeding in accordance with the Uniform Domain Name Dispute Resolution Policy ("UDRP"), approved by the Internet Corporation for Assigned Names and Numbers ("ICANN"). Although Plaintiff obtained a favorable decision and transfer of the offending domain, Defendant simply registered a new domain through which he continues his scheme. This new website, too, uses Plaintiff's federally registered CONSUMERDIRECT mark to feign legitimacy, and at least one of Defendant's victims has accused Plaintiff of causing this harm.

3. On information and belief, Defendant will continue infringe Plaintiff's CONSUMERDIRECT mark unless enjoined. Plaintiff thus brings this action to protect its valuable intellectual property rights.

4. Plaintiff seeks where appropriate injunctive relief, statutory damages, an award of Defendant's profits, attorney's fees, and costs for trademark infringement under 15 U.S.C. section 1114(1)(a) and (b); false designation of origin and/or sponsorship under 15 U.S.C. section 1125(a); and common law trademark and trade name infringement, and unfair competition, with respect to Plaintiff's federally registered CONSUMERDIRECT trademark.

## **PARTIES**

5. Plaintiff is a Nevada Corporation with its principal place of business at 16795 Von Karman Ave., Suite 230, Irvine CA 92606. Plaintiff is qualified to conduct business in California.

6. On information and belief, Defendant August Taylor is an individual residing in Ho Chi Minh City, Vietnam. Via the earlier UDRP proceeding, Plaintiff obtained the name, address, phone number, and email address that Defendant used

to register the infringing domain.

7. On information and belief, Defendant has deceived and intends to deceive consumers residing in this judicial district through his interactive website and feigns affiliation with Plaintiff by virtue of his use of Plaintiff's federally registered mark. Defendant, however, uses his website and exploits his false affiliation with Plaintiff to perpetrate a scam, as explained further below.

8. On information and belief, Defendant has purposefully directed his fraudulent activities toward consumers residing in this judicial district, including without limitation by deceiving unsuspecting California consumers into a fraudulent scam, and exploiting the goodwill associated with Plaintiff's CONSUMERDIRECT mark to do so – all the while on notice that Plaintiff is a resident of this judicial district and that Plaintiff would suffer harm in this judicial district.

9. Indeed, the filings submitted in the UDRP proceeding, as well as the decision itself, notified Defendant that Plaintiff conducts business from this judicial district. These materials had been served on Defendant via the email address registered in connection with his domain, in addition to the email address listed on the infringing website. Still, knowing Plaintiff resides here, Defendant brazenly registered a new website using Plaintiff's mark to defraud consumers.

10. By engaging in the activities set forth herein, Defendant has purposefully availed himself of the privilege of conducting activities in this forum, thereby invoking the benefits and protections of the laws of the State of California, and of this judicial district in particular.

11. On information and belief, each of the defendants named herein as DOES 1 through 10, inclusive, performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged below, and are liable to Plaintiff for the damages and relief sought herein. The identities of the individuals and entities named as defendants DOES 1 through 10, inclusive, are not presently known, but Plaintiff will seek to amend the Complaint to identify them

when their names and identities have been ascertained.

12. On information and belief, Plaintiff alleges that, in performing the acts and omissions alleged herein, and at all times relevant hereto, each of the Defendants was the agent, servant, alter ego, employee, and/or successor or predecessor in interest of each of the other Defendants, and was at all times acting within the course and scope of such relationship, with the knowledge, approval, consent, or ratification of each of the other Defendants.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1338, and 15 U.S.C. section 1121, because Plaintiff's claims arise, in part, under the Lanham Act, 15 U.S.C. section 1051 *et seq*. This Court has supplemental jurisdiction pursuant to 28 U.S.C. sections 1338(b) and 1367 over Plaintiff's claims arising under the laws of the State of California.

14. This Court also has jurisdiction under 28 U.S.C. section 1332 because Plaintiff is a citizen of a State and Defendant is a citizen of a foreign state, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

15. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has repeatedly exploited Plaintiff's mark to defraud consumers, including consumers residing in this judicial district, via Defendants' interactive website, all while knowing that Plaintiff is a resident of this judicial district and that Plaintiff would suffer harm here. Defendant's intentional actions were thus expressly aimed at this judicial district.

16. Through the UDRP proceeding that Plaintiff initiated against Defendant, Defendant learned that Plaintiff resides within this judicial district. Even after those proceedings ended in Plaintiff's favor, Defendant continued to specifically and individually target Plaintiff by exploiting Plaintiff's mark to deceive unsuspecting consumers. Defendant knew he would cause harm in California because his scheme depended on feigning association with Plaintiff, a company he

knew to be located in Orange County, California.

17. Venue is proper in the Central District of California under 28 U.S.C. section 1391(a) and section 1391(b) because a substantial part of the events, omissions and acts that are the subject matter of this action, and the resulting injury to Plaintiff, occurred within the Central District of California. This action arises out of Defendant's trademark infringement as alleged below, and the threatened and actual harm to Plaintiff by reasons thereof. Plaintiff is informed and believes, and thereon alleges, that Defendant conducts business in this judicial district through his infringing, interactive website and receives compensation from luring consumers in this judicial district to his infringing website, as alleged below. Furthermore, by his actions alleged herein, Defendant has caused harm to Plaintiff at its headquarters in this judicial district.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**I.    Plaintiff's CONSUMERDIRECT Trademark.**

18. Plaintiff is a well-known provider of credit score management services whereby its consumers can monitor credit reports, learn how to increase their credit score, manage debt, and monitor fraudulent activity that may affect their credit. Since 2003, Plaintiff has helped millions of Americans improve their credit scores and finances. Plaintiff offers its services to consumers via its websites, including https://www.consumerdirect.com/.

19. Plaintiff is the proud owner of an A- rating from the Better Business Bureau (BBB) and has developed a nationwide reputation for quality consumer financial products, including fraud monitoring services.

20. Plaintiff owns a federal trademark registration for its CONSUMERDIRECT mark, namely, U.S. Registration No. 3,225,875 (the "Mark"). Plaintiff's Mark has been registered since for April 3, 2007, for use in connection with: "Financial services, namely, credit risk analysis, credit monitoring, credit management and analysis, and providing information in the field of credit

management, all over computer networks." A true and correct copy of the certificate of registration for the Mark is attached to this Complaint as **Exhibit A**.

21. Plaintiff thus has longstanding federal registration rights in its CONSUMERDIRECT Mark, which has become incontestable. Plaintiff's Mark is valid and subsisting and remains in full force and effect.

22. Indeed, long before Defendant used any similar mark, Plaintiff has continuously, prominently and exclusively used its Mark to denote the source of its financial services, including credit score improvement and fraud monitoring, in the United States. During this period, Plaintiff has committed significant amounts of time, effort and money to developing a widely respected reputation in the financial services industry through which the Mark has acquired secondary meaning indicating Plaintiff as the source of its high-quality services. Thus, before the acts complained of in this Complaint, members of the general consumer population recognized the Mark as an exclusive source identifier for financial services originating from, sponsored or approved by Plaintiff.

23. On information and belief, Plaintiff has the exclusive right to use the Mark in interstate commerce in connection with financial services, and Plaintiff's use has been exclusive since it first adopted the Mark, with the exception of unauthorized uses such as by Defendant as described in this Complaint.

24. Plaintiff has widely advertised, promoted and marketed goods under its Mark in numerous and diverse advertising media, including print and the internet, to promote the strength and renown of its Mark. Plaintiff has achieved a high level of commercial success in selling products and services bearing its Mark, and has built a valuable reputation and substantial goodwill, with which the Mark has become synonymous.

25. A substantial part of these sales, advertisements, and promotions have occurred via Plaintiff's website, https://www.consumerdirect.com/, which prominently features Plaintiff's Mark.

## II. Defendant's First Infringing Website.

26. On our about May 5, 2020, Defendant registered the domain name www.consumerdirectsavings.com (the "Infringing Domain"), which is confusingly similar to Plaintiff's CONSUMERDIRECT Mark, in a flagrant attempt to trade off of the renown and goodwill of the Mark.

27. Plaintiff became aware of Defendant's Infringing Domain when it began receiving a flurry of complaints via the Better Business Bureau (BBB), including the following, which are attached hereto as **Exhibit B**:

    a. "Did not receive voucher to purchase merchandise as promised. Voucher is part of so-called 'subscription' program of Consumer Direct Savings aka One Stop Discount Solution aka Best Consumer Gadget Store aka Smart Health Planner. Resolution is refund of 7.95 and 56.95 combined deducted from my account."

    b. "I took an online survey and for my service I was to receive a gift all I had to do was pay The shipping and handling for the gift they charge for the shipping and handling was $6.98. When I received my credit card bill there was a charge for $56.95 when I called them to discuss the matter they told me I had signed up for years worth of consumer direct savings store and the charge for that was $49.97. I told him to cancel my subscription and they gave me a cancellation code of KC021. I called my credit card company and they're dealing with the matter now"

    c. "[I w]as charged $67.32, however i have never even heard of the company and did not purchase or sign up for any offer the charge had a phone number associated with it and i called and was told that i had completed a transaction wit consumer direct savings, which is not correct. i was told that there was nothing i can do about the charge and that i created an account with them onmarch 13,2022. which is not possible as i worked the entire day an have no access to the internet at work i asked to speak with a manager or

supervisor and was told that was not possible, he went on to say that i had signed up for a subscription and would be billed monthly. i assure you that i have never signed up for any subscriptio that i agreed to be billed for monthly. i assume that this is some kind of scam. is there any way for me to get my money returned?"

28.  Thus, Defendant did not use this Infringing Domain to operate any legitimate business, but rather as a scam website to dupe consumers into providing information – including credit card information – that was then used by Defendant to charge consumers for goods and services that are not actually provided.

29.  Accordingly, on March 31, 2022, Plaintiff initiated the UDRP proceeding with the Forum, seeking transfer of Defendant's Infringing Domain to Plaintiff.  The Forum served the UDRP complaint on Defendant via the email addresses associated with his Infringing Domain, yet Defendant did not respond.

30.  On May 2, 2022, the Forum issued a decision in Plaintiff's favor and transferred the Infringing Domain to Plaintiff.  A true and correct copy of this decision is attached to this Complaint as **Exhibit C**.  The Forum's findings included:

    a.  "The at-issue domain name consists of Complainant's CONSUMERDIRECT trademark followed by the term "savings" with all followed by the ".com" top-level domain name. The differences between <consumerdirectsavings.com> and Complainant's CONSUMERDIRECT trademark are insufficient to distinguish the domain name from Complainant's trademark[.]"

    b.  "Respondent uses the at-issue domain name to perpetuate a phishing scheme.  Visitors to the <consumerdirectsavings.com> website are duped into submitting credit card information to Respondent. Website visitors who attempt to order offerings from Respondent get charged but never received any benefit and may also be charged for items they never attempted to order."

c. "Respondent had actual knowledge of Complainant's rights in the CONSUMERDIRECT mark when it registered <consumerdirectsavings.com> as a domain name. Respondent's actual knowledge is evident given the notoriety of Complainant's CONSUMERDIRECT trademark. Respondent's registration and use of a confusingly similar domain name with knowledge of Complainant's trademark rights in such domain name further indicates Respondent's bad faith[.]"

### III.  Defendant Registers A New Website

31. On or about November 29, 2022, Defendant registered a new domain name, https://www.simplydiscountshop.com/ (the "New Website"). Although the domain name for the New Website had been changed to omit reference to Plaintiff's Mark (and, ostensibly, insulate it from transfer via another UDRP proceeding), the webpage otherwise remained identical. The New Website, like the Infringing Domain, prominently featured "Consumer Direct Savings" (the "Infringing Mark"), which incorporates Plaintiff's Mark in its entirety.

32. Indeed, the homepage of the New Website remains the same as its predecessor, prominently featuring the Infringing Mark. The "About" page of the New Website, too, identifies the owner of the website as "Consumer Direct Savings." The New Website provides the following email address for consumers to contacy: support@consumerdirectsavings.com. Finally, the privacy policy for the New Website identifies the owner as "consumerdirectsavings.com." True and correct copies of printouts of these webpages are attached hereto as **Exhibit D**.

33. Further confirming that Defendant is responsible for operating this New Website, the domain information of the New Website lists the same address associated with its privacy service (i.e., Kalkofnsvegur 2, 101 Reykjavik, Capital Region, Iceland) as the Infringing Domain, which address has been associated with other scams, as well as with DarkSide ransomware.

34. Plaintiff learned of this New Website on August 15, 2023, when it received a complaint from a victim of Defendant's scheme, shown below:

> Subject: Took MY MONEY I WANT REFUND
> Date: Tue, 15 Aug 2023 13:50:59 +0000
> From: Lynn Rauscher
> To: info@consumerdirect.com <info@consumerdirect.com>
>
> I called the bogus customer CARE... joke... to said they contacted YOU...
> SAID YOU WOULD NOT REFUND MY MONEY !!!! ONLY GIVE ME $19.95 OF THE $39.99 YOU STOLE FROM ME!!!!!!!!!!!!!!!!!!!!!
> I DID NOT... I REPEAT DID NOT GIVE YOU PERMISSION TO TAKE MY MONEY..
> I DON'T EVEN KNOW WHO THE HELL YOU ARE.
> MY MONEY WAS TAKEN ON JULY 19 IN THE AMOUNT OF $39.99 FROM SOME SHIT HOLE COMPANY CALLED DYNAMICL 877-203-7336
>
> I HAVE REPORTED YOUR UNLAWFUL BUSINESS TO THE BBB.
> LIKE YOU GIVE A SHIT... YOU HAVE STOLEN MONEY FROM THOUSANDS FROM ALL THE COMMENTS ON GOGGLE...
>
> I WANT MY REFUND IN THE FULL AMOUNT!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!

Through further investigation, Plaintiff ascertained that the sender had been defrauded by Defendant via the New Website.

35. Based on a review of consumer complaints addressing this New Website – some of which have been erroneously targeted to Plaintiff – Plaintiff is informed and believes that Defendant uses this New Website to advertise the sale of products at a significant discount, yet it never delivers said products to purchasers. Instead, shortly after the attempted purchase, Defendant charges the credit card information for additional, unauthorized amounts. Often, Defendant will bill the victims' credit card for a subscription service, with charges recurring on a monthly basis. The victims receive no product, nor service, for these fraudulent charges. This is the same scheme that Defendant perpetrated in connection with the Infringing Domain. Both websites used the Infringing Mark, and both websites resulted in actual consumer confusion.

36. Because Plaintiff provides financial services – including credit monitoring and fraud prevention – an interested consumer could reasonably Google the phrase "Consumer Direct savings" in an effort to find Plaintiff. The New Website, however, is a top result of said search, with Plaintiff's own website trailing behind the New Website. Other top results include crowd-sourced review and scam

detector websites, which are rife with reviews of defrauded consumers warning others to avoid the Infringing Domain and the New Website at all costs.

37. For example, one frustrated victim of the New Website – who ultimately cancelled her credit card to stop Defendant's unauthorized charges – posted a copy of the email she received in response to her complaints, which claimed that she had signed up for a "membership" with the Consumer Direct Savings store to obtain purported financial benefits:

> Thank you for contacting Customer Care as your concern is important to us.
> Unfortunately, we do not have the authority to adjust your account details in the email department. Please take a moment to review the copy of the Terms and Conditions that were agreed to upon signing up for this trial in order to receive shipment:
>
> "In addition to the $5.96* S&H I am paying now, I understand and agree the following: By clicking the Order Now button, I will immediately be charged only $5.96* S&H to ship my FREE Camera Doorbell, which is a welcoming gift for joining. I will also be charged $67.43* for my 1st-month membership within the next 48 hours, but with the FREE Camera Doorbell and the $125 Gift Card to the best consumer gadgets club on the web, it is really costing me nothing to become a member! By being a member of the Consumer Direct Savings store, I will receive the $125 Gift Card EVERY MONTH and will have access to direct-from-factory savings on hundreds of products! That my credit will be billed $67.43* monthly for my membership. I also understand that I am free to cancel my membership at any time by simply contacting Customer Service at (855) 474-5826 and I will not be charged further. *Price subject to change."

38. Defendant thus purports to provide consumers with financial savings under the Infringing Mark, such that the illusory services offered under the Infringing Mark overlap with the legitimate financial services offered by Plaintiff.

## IV. Defendants' Infringement Has Harmed Plaintiff

39. Defendant's operation of the New Website has not only caused actual consumer confusion based on use of the Infringing Mark, but it has also produced an abundance of negative reviews regarding "Consumer Direct Savings," which are easily discoverable after a quick Google search. This has sullied the Mark in which Plaintiff has invested for two decade.

40. Compounding these issues, Plaintiff offers fraud monitoring services under its Mark. By using the Infringing Mark to defraud consumers, Defendant has directly undercut the esteemed reputation that Plaintiff has earned as a reliable means of monitoring fraudulent credit card activity. Moreover, Defendant purports to charge victims' credit cards for a subscription to a discount program, which overlaps with the legitimate financial services offered by Plaintiff.

41. Given the foregoing, on August 29, 2023, Plaintiff's counsel sent a demand letter to Defendant, transmitting said letter to: (1) the email address registered in connection with the Infringing Domain; and (2) the email address listed on the New Website for customer support purposes. A true and correct copy of this letter is attached to this Complaint as **Exhibit E**. At this point, however, nearly two months have elapsed, and no response has been received. The New Website continues to operate, and additional consumers have since fallen victim to Defendant's scam.

42. On information and belief, Defendants knowingly and deliberately adopted Plaintiff's CONSUMERDIRECT Mark to capitalize on its goodwill for the purpose of engaging in fraud. Defendants are not authorized to use the Mark, or marks confusingly similar to the Mark, in connection with their goods and services.

43. Defendants' use of the CONSUMERDIRECT Mark or marks confusingly similar to the Mark, purportedly for discount-related services, is likely to cause confusion, mistake and deception such that members of the public are likely to be confused as to the affiliation, connection or relationship between Plaintiff and

Defendants, and confused into believing Defendants' goods and services are endorsed or sponsored by Plaintiff, when they are not. Each of these actions creates a likelihood of consumer confusion.

44. On information and belief, Defendants' activities complained of herein constitute willful and intentional infringement of the CONSUMERDIRECT Mark, with Defendants solely moving their fraudulent website to a new domain after transfer of the Infringing Domain in the UDRP proceeding. Like the Infringing Domain, the New Website prominently features the Infringing Mark.

45. Plaintiff seeks injunctive relief to prevent the irreparable harm that will be caused by Defendants' repeated and flagrant exploitation of the renown and goodwill of the CONSUMERDIRECT Marks to perpetrate a scam. Without an injunction, Defendants will continue to use Plaintiff's Marks to deceive consumers.

## FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement - 15 U.S.C. § 1114 Against All Defendants)

46. Plaintiff repeats and incorporates by this reference each and every allegation above as though set forth in full.

47. By the acts and omissions set forth above, Defendants have infringed and continue to infringe Plaintiff's federally registered trademark rights in violation of Section 32 of the Lanham Act, 15 U.S.C. section 1114. Defendants' conduct and use of the CONSUMERDIRECT Mark, or marks confusingly similar to the Mark, is likely to cause confusion, mistake and deception among the general purchasing public as to the affiliation, connection, association, origin, sponsorship or approval of Defendants' purported services, and interfere with Plaintiff's ability to use its marks to indicate a single quality control source of its products and services.

48. Specifically, Defendants have created the appearance of an affiliation, association, sponsorship or relationship between themselves and Plaintiff by, among other things intentionally and repeatedly incorporating Plaintiff's CONSUMERDIRECT Mark into fraudulent websites. By offering to provide

consumers with financial savings, Defendants' purported services overlap with the legitimate financial services offered by Plaintiff.  For these reasons, consumers who are directed to or visit Defendants' websites are likely to be misled into believing that this website is associated, authorized, sponsored, or controlled by Plaintiff.

49. Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury for which Plaintiff has no adequate remedy at law.  Plaintiff is therefore entitled to a preliminary and permanent injunction against further infringing conduct by Defendants.

50. Defendants have profited and are profiting by such infringement, and Plaintiff has been, and is being, damaged by such infringement.  Plaintiff is therefore entitled to recover damages from Defendants in an amount to be proved at trial as a consequence of Defendants' infringing activities.

## SECOND CLAIM FOR RELIEF

## (False Designation of Origin and Unfair Competition - 15 U.S.C. § 1125(a) Against All Defendants)

51. Plaintiff repeats and incorporates by this reference each and every allegation above as though set forth in full.

52. The acts of Defendants as alleged herein also constitute false designation of origin and unfair competition in violation of Lanham Act section 43(a), 15 U.S.C. section 1125(a).

53. On information and belief, Defendants use the CONSUMERDIRECT Mark in commerce, which use has been done with the deliberate intent of capitalizing and trading on the goodwill and reputation of Plaintiff.

54. Defendants' use in commerce of the CONSUMERDIRECT Mark will tend to cause and, on information and belief, has caused the relevant public and trade to believe erroneously that Defendants and their websites are associated, authorized, sponsored, or controlled by Plaintiff.

55. Defendants' use in commerce of the CONSUMERDIRECT Mark in

connection with their websites and purported goods and services constitutes a false and misleading designation of the origin and/or sponsorship of these websites and purported goods and services.

56. By the acts as alleged herein, Defendants have falsely designated and represented goods and services used in commerce in violation of 15 U.S.C. section 1125(a) and, on information and belief, have used the goodwill of Plaintiff to lure consumers into a scam.

57. Defendants' conduct constitutes unfair competition that has violated, and unless restrained and enjoined by this Court will continue to violate, Plaintiff's trademark rights, and will cause irreparable harm, damage, and injury to Plaintiff's goodwill and business reputation.

58. Similarly, if Defendants' conduct is not restrained and enjoined by this Court, Plaintiff will be irreparably injured as a result of Defendants' infringement and wrongful acts, circumstances as to which Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to a permanent injunction against further infringing and unlawful conduct by Defendants.

59. Defendants have profited and are profiting by such infringement and Plaintiff has been and is being damaged by such infringement. Plaintiff is therefore entitled to recover damages from Defendants in an amount to be proved at trial as a consequence of Defendants' infringing and unlawful activities.

### THIRD CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition Against All Defendants)

60. Plaintiff repeats and incorporates by this reference each and every allegation above as though set forth in full.

61. The actions and conduct of Defendants as alleged herein are likely to cause confusion, mistake, and deception to consumers as to the affiliation, connection, or association of Defendants with Plaintiff, and as to origin of

Defendants' purported goods and services, and Plaintiff's apparent sponsorship or approval of Defendants' purported goods and services.

62. Defendants' unauthorized actions and conduct as alleged herein constitute unfair competition under California common law and direct infringements of Plaintiff's federal trademarks in violation of California common law.

63. Defendants, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage and injury to Plaintiff, including but not limited to injury to Plaintiff's goodwill and business reputation.

64. Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury for which Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to a permanent injunction against further infringing conduct by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an order and judgment against Defendants, and each of them, as follows:

1. That Defendants, and each of them, their owners, partners, agents, servants, distributors, affiliates, employees, representatives, and all those in privity or acting in concert with Defendants or on their behalf, be permanently enjoined and restrained from, directly or indirectly:

   a. Selling, offering to sell, advertising, displaying, or using the CONSUMERDIRECT Mark, any derivative thereof, or any other mark similar thereto, alone or in combination with other words, names, styles, titles, designs or marks in connection with the sale, advertising, marketing and promotion of home loans;

   b. Using in any other way any other mark or designation so similar to the CONSUMERDIRECT Mark as to be likely to cause confusion, mistake or deception as to an affiliation, connection, sponsorship or endorsement of Defendants and/or their products or services by or with Plaintiff;

   c. Representing or implying that Defendants are in any way sponsored by, endorsed by or licensed by Plaintiff;

   d. Using any words, names, designs, titles or marks that create a likelihood of confusion with Plaintiff's trademarks;

2. For an order requiring Defendants to deliver to Plaintiff's attorneys within thirty (30) days after the entry of any injunction, to be impounded or destroyed by Plaintiff, all graphics, literature, signs, labels, prints, packages, wrappers, containers, advertising and promotional materials, products and any other written materials or items in Defendants' possession or control that bear the aforesaid infringing mark, together with all means and materials for making or reproducing the same, pursuant to 15 U.S.C. section 1118, and other applicable laws;

3. For an order requiring Defendants to file with the Clerk of this Court and serve Plaintiff, within thirty (30) days after the entry of any preliminary or permanent injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with 1 through 2 above;

4. For an award of Defendants' profits and Plaintiff's damages according to proof at trial;

5. For an order requiring Defendants to account for and pay to Plaintiff all gains, profits and advantages derived by Defendants from the unlawful activities alleged herein, and/or as a result of unjust enrichment;

6. For an award of pre- and post-judgment interest at the highest rate allowed by law;

7. For an award of Plaintiff's attorneys' fees, costs and expenses, including but not limited to expert witness fees, incurred in this action; and

8. For such further relief as this Court shall deem just and proper.

| | | |
|---|---|---|
| 1 | Dated: November 2, 2023 | RUTAN & TUCKER, LLP<br>MICHAEL D. ADAMS<br>SARAH VAN BUITEN |
| 2 | | |
| 3 | | By: _/s/ MDA_____ |
| 4 | | Michael D. Adams<br>Attorneys for Plaintiff |
| 5 | | CONSUMERDIRECT, INC. |

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this action.

Dated: November 2, 2023

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
SARAH VAN BUITEN

By: /s/ MDA
Michael D. Adams
Attorneys for Plaintiff
CONSUMERDIRECT, INC.